# In the United States Court of Federal Claims

No. 16-932
(Filed: 1 May 2023)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SPECTRE CORPORATION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

Motion for Enlargement of Time; *Pioneer*;
Excusable Neglect; Counsel Mistake;
Motion in Limine; Expert Report; Prejudice.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*James W. Wiggin III* of Columbus, OH, for plaintiff.

*Andrew J. Hunter*, Trial Attorney, with whom were *Martin F. Hockey, Jr.*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, and *Jim Burke*, NASA, all of Washington, DC, for defendant.

## ORDER

**HOLTE, Judge.**

Spectre Corporation ("Spectre" or "plaintiff") accuses the National Aeronautics and Space Administration ("NASA" or "the government") of breaching contracts to license and commercialize NASA's patented silicon carbide pressure sensor technology to Spectre. In a 26 July 2022 Opinion and Order, the Court permitted plaintiff to serve—on the government—revised disclosures of plaintiff's packaging cost estimate, expert report and fabrication cost estimate, and sales projections. The Court adopted the parties' proposed schedule in a 26 August 2022 Order, which required plaintiff to serve the revised disclosures by 31 October 2022. Spectre missed the 31 October 2022 deadline, filed a motion for enlargement of time on 30 November 2022 seeking an extension until 2 December 2022, and served its disclosures on the government on 6 December 2022. Spectre does not advance any excuse for missing the 31 October 2022 deadline.[1] For the following reasons, plaintiff's Motion for Enlargement of Time is denied.

## I.      Factual Background of the Case

---

[1] "[C]ounsel for Spectre Corporation has no viable excuse for the delay, only inadequate explanations." Pl.'s Reply Mem. in Supp. of Mot. for Enlargement of Time ("Pl.'s Reply") at 1, ECF No. 138.

The Court's 26 July 2022 Opinion and Order addressing the parties' motions in limine provides the general factual background:

> Plaintiff Spectre Corporation . . . and the United States through the National Aeronautics and Space Administration . . . executed two agreements to commercialize pressure sensor technology NASA developed and patented. The first agreement, SAA3-210 ("Space Act Agreement") executed on 22 December 2011, sets forth NASA's and Spectre's obligations to commercialize NASA's silicon-carbide sensor technology. *See* Compl. Ex. 3 at 5–21 (Space Act Agreement), ECF No. 1-3. The second agreement, DE-456 ("Exclusive License Agreement") executed on 14 May 2012, granted Spectre a royalty-bearing, exclusive license to practice the silicon-carbide sensor patents through 25 January 2025, the end of the patents' terms, and required Spectre to pay a $50,000 fee to NASA. *See* Compl. Ex. 1 at 1–17 (Exclusive License Agreement), ECF No. 1-1; Compl. Ex. 2 at 1–14 (Exclusive License Agreement), ECF No. 1-2; Compl. Ex. 3 at 1–3 (Exclusive License Agreement), ECF No. 1-3. Around the same time, Spectre applied for and received a $1,000,000 grant from the State of Ohio to commercialize the sensor technology. *See* Compl. Ex. 3 at 23–84 (Ohio Grant), ECF No. 1-3.
>
> After delays and conflicts affecting the performance of obligations under the contracts, NASA terminated the Exclusive Licensing Agreement and halted its performance under the Space Act Agreement, allowing the Space Act Agreement to expire by its own terms. Compl. at 4, ECF No. 1. Plaintiff brought this action for breach of the Space Act Agreement and the Exclusive Licensing Agreement claiming $215,000 for fees paid to NASA, at least $2,000,000 for money spent on the failed project, and more than $45,000,000 in lost profits. *See* Compl.

26 July 2022 Op. & Order at 2, ECF No. 133. "The lost profits calculations rely in part on three sources:"  (1) a fact report on packaging cost information; (2) an expert report on fabrication cost information; and (3) a fact report on sales projections. *Id.*

## II.     Factual & Procedural Background of Plaintiff's Motion for Enlargement

In its 26 July 2022 Opinion and Order, the Court granted the government's motions in limine to exclude the fact report on packaging cost information, portions of the expert report on fabrication cost information, and portions of the fact report on sales projections. *Id.* at 21. The Court granted plaintiff a second opportunity to "prepare and serve the government with a revised report" for each of the three reports based on "admissible evidence." *Id.* The Court ordered the parties to file a joint status report ("JSR") proposing a "schedule for further proceedings related to the government's motion for partial summary judgment." *Id.* On 25 August 2022, the parties filed a JSR with a proposed schedule. JSR, ECF No. 134. On 26 August 2022, the Court adopted the parties' proposed schedule from the JSR, which set 31 October 2022 as the deadline for plaintiff to provide the government "with any additional disclosures permitted by the Court's [26 July 2022 Opinion and Order] . . . to include at a minimum" the updated expert report. 26 Aug. 2022 Order at 1, ECF No. 135. Plaintiff failed to serve any disclosures on the government

- 2 -

by the deadline.  Def.'s Opp'n to Spectre's Out of Time Mot. for an Enlargement of Time ("Gov't's EOT Resp.") at 2, ECF No. 137.

On 1 November 2022, the government emailed plaintiff, stating the missed deadline and seeking an update on the status of the disclosures:

> As you know, the Court's scheduling order required Spectre to provide the Government with any updated disclosures by 10/31.  As of the night of 11/1, we have not yet received any additional materials from Spectre.  Please update us on the status of these materials and deliver them so that we can begin our review and response.

Gov't's EOT Resp. Ex. 1 ("Gov't's 1 Nov. 2022 Email"), ECF No. 137-1.  On 18 November 2022, after multiple emails between the parties, plaintiff informed the government of its expectation to serve the disclosure by the end of the week or the following Monday, 21 November 2022.  Gov't's EOT Resp. Ex. 5 ("Pl.'s 18 Nov. 2022 Email"), ECF No. 137-5.  The government replied to plaintiff, stating:

> The Government is prejudiced by Spectre's ongoing delay in producing its disclosures, for which it has sought no extension from the Government or the Court. . . .  My earlier emails to you were to attempt in good faith to reach out in the event the delay could be deemed de minimis.
>
> As it has been more than two weeks past your deadline to produce (and your suggested disclosure date of Monday shows that it will be three weeks before any disclosures are provided)[,] Spectre's delay cannot be characterized as de minimis.

Gov't's EOT Resp. Ex. 6 ("Gov't's 18 Nov. 2022 Email"), ECF No. 137-6.  Plaintiff failed to serve the disclosure by the expected date of 21 November 2022 noted in its 18 November 2022 email, and on 28 November 2022, plaintiff emailed the government again, explaining it "expect[ed] to be sending [the] report later" the same day.  Gov't's EOT Resp. Ex. 7 ("Pl.'s 28 Nov. 2022 Email"), ECF No. 137-7.  Plaintiff failed, again, to serve the disclosure per its expected timeline of 28 November 2022, and on 29 November 2022, the government reminded plaintiff of the lack of an extension of time request and informed plaintiff of its intent to file a status report:

> As you know, under the Court's scheduling order, our deadline to respond to Spectre's disclosures is tomorrow, November 30[, 2022].  To date, we have not received anything, despite it now being over four weeks past Spectre's deadline to produce such disclosures, without any extension requested or granted from the Court or from the Government.
>
> Because we have received nothing to review or rebut from Spectre, there is no response we can make to such information pursuant to the Court's scheduling order.
>
> In order to prevent our deadline from passing without comment, we intend to file a

defendant's status report tomorrow, advising the Court of this situation and recommending that the Court put in place a schedule for summary judgment proceedings.

You may let us know your position on that request[,] and I will represent it in our report.

Gov't's EOT Resp. Ex. 8 ("Gov't's 29 Nov. 2022 Email"), ECF No. 137-8.

On 30 November 2022, plaintiff filed its Motion for Enlargement of Time, moving pursuant to Rule 6(b)(1)(B) of the Rules of the United States Court of Federal Claims ("RCFC") "for an extension of time up to and including Friday, December 2, 2022 in which to deliver [the] updated expert report to counsel for the Government" and acknowledging "[t]he original deadline for submission . . . was October 31, 2022." Pl.'s Mot. for Enlargement of Time ("Pl.'s Mot.") at 1, ECF No. 136. On 1 December 2022, the government filed its response brief in opposition to plaintiff's Motion. Gov't's EOT Resp. On 8 December 2022, plaintiff filed its reply, noting it served the updated expert report on the government on 6 December 2022. Pl.'s Reply at 2. Plaintiff does not claim any excuse for the missed deadline and delay:

> The Government is correct; counsel for Spectre Corporation has no viable excuse for the delay, only inadequate explanations.

Pl.'s Reply at 1; *see also* 19 Jan. 2023 Oral Arg. Tr. ("Tr.") at 27:1–6 ("[PLAINTIFF]: . . . I knew that this was coming up and that we were running out of time and . . . the one thing I didn't do was look to see when the actual deadline was, and there's no excuse for that."), ECF No. 141.

On 19 January 2023, the Court held telephonic oral argument on plaintiff's Motion for Enlargement of Time. *See* Order, ECF No. 139; Tr.

## III.   Whether Spectre's Motion for Enlargement of Time Can Be Granted

### A.   Whether the Court Has Discretion to Grant the Motion

Plaintiff asks the Court for general equitable leniency upon its Motion for Enlargement of Time regardless of meeting the RCFC 6(b)(1)(B) standard. *See* Tr. at 44:13–45:5 ("THE COURT: . . . [Y]ou've motioned for an extension under a certain rule, but you agree that you haven't met the standards for that rule. . . . [H]ow is it that I can grant the extension unless there's some other submission from the parties jointly where there's agreement that the previous deadline that was submitted that I signed off on is now agreed to be changed? [PLAINTIFF]: . . . [T]he courts always have discretion to do certain things in equity . . . ."). The Supreme Court notes "lack of any prejudice to the [nonmovant] or to the interests of efficient judicial administration, combined with the good faith of [the movant] and their counsel, weigh strongly in favor of permitting the tardy claim[,]" but existence of any of these factors may be grounds for denying the motion. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993) ("To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the [trial

court] abused its discretion in declining to find the neglect to be 'excusable.'").  The Court accordingly must weigh the *Pioneer* factors to determine whether plaintiff's failure to meet the deadline constituted "excusable neglect" and, consequently, whether to grant plaintiff's Motion for Enlargement of Time.

## B.   Whether Spectre's Delay Constitutes Excusable Neglect

Under RCFC 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time:  (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.  Both parties agree the proper standard is excusable neglect pursuant to RCFC 6(b)(1)(B), not good cause pursuant to RCFC 6(b)(1)(A).  *See* Tr. at 38:1–3 ("[THE GOVERNMENT]:  . . . 6(b)(1)(B) is for extensions requested after the deadline.  So that's the rule that applies."), 42:19–21 ("THE COURT:  . . . [D]o you agree that the standard is excusable neglect? [PLAINTIFF]:  Yes.").  "When a rule setting forth a filing deadline has included language contemplating excusable neglect, we have looked to *Pioneer*."  *Nelson v. Nicholson*, 489 F.3d 1380, 1385 (Fed. Cir. 2007).  "*Pioneer* speaks to the circumstance in which the term 'excusable neglect' is found in a statute or rule."  *Id.*  "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer*, 507 U.S. at 395.  In balancing party interests, the Supreme Court uses four factors:  (1) whether granting the delay will prejudice the nonmovant; (2) the length of the delay and its impact on efficient court administration; (3) whether the reason for the delay was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *Id.*  The government provides examples of extenuating circumstances it argues qualify as excusable neglect—e.g., "a car accident, [various] medical emergenc[ies,] . . . [a] misunderstanding[,] . . . [and] the notice of [a] . . . deadline . . . [being] filed in . . . a nonstandard way . . . that could have confused counsel."  Tr. at 38:17–39:19.

In briefing and at oral argument, plaintiff did not claim excusable neglect, and the government agreed the standard is not met.  *See infra* Section III.B.3–4.  Plaintiff explains it has reasons but no excuses.  *See infra* Section III.B.3; Pl.'s Reply at 1 ("[C]ounsel for Spectre Corporation has no viable excuse for the delay, only inadequate explanations.").  The Court considers the circumstances of this case to determine whether there is "excusable neglect," analyzing each *Pioneer* factor in turn.

### 1.   The First *Pioneer* Factor:  Prejudice to the Nonmovant

The parties dispute whether the government will experience prejudice if the Court grants plaintiff's Motion for Enlargement of Time.  Plaintiff contends the government will experience no prejudice.  Pl.'s Reply at 3.  Plaintiff identifies multiple instances where the government was unconcerned with a delay when the government was seeking extensions of time, arguing it is "ludicrous" for the government to claim this particular extension prejudices it.  *Id.* ("[F]or the Government to claim it is being prejudiced in any meaningful sense by the delay is ludicrous. The Government had no concerns about delay when it received an extension of time from Spectre to respond to the complaint[,] . . . because new attorneys were assigned to the

case[,] . . . when it demanded to file a summary judgment motion instead of proceeding to trial and then filed motions in limine instead[,] . . . [and] when its current counsel wanted to take four months of paternity leave.").

The government argues one month of delay after the deadline is significant even in the context of a six-year case considering the prejudice compounds, and plaintiff showed repeated noncompliance with the rules. *See* Tr. at 48:21–24 ("[THE GOVERNMENT]: . . . [The prejudice factor] should count all of the days that Spectre was indolent during the three months it had after the order."), 50:12–18 ("THE COURT: . . . [W]ith respect to the days of delay, wouldn't you agree that in the grand total of . . . time that this case has run—and noting specifically that it's a 2016 filed case—this delay is somewhat insignificant . . . ?  [THE GOVERNMENT]:  I can't agree with that . . . .").  The government further argues previous delays were also plaintiff's fault, thus collectively resulting in a large delay—and prejudice to the government—for which plaintiff is responsible. *See* Tr. at 57:3–8 ("[THE GOVERNMENT]:  You can see in the joint status reports from 2018 to mid-2019 the extensions that the parties are requesting are founded on Spectre . . . want[ing] some more time to revise [their] reliance damages, . . . additional claims that are in the case that aren't the lost profits.").

In considering the degree of prejudice against the government, the Court underscores the extensive delay from the already-elapsed time—i.e., the months between 26 August 2022 and 31 October 2022, which is the deadline the parties agreed on in their JSR.  *See* Tr. at 48:25–49:3 ("[THE GOVERNMENT]: . . . When you request from the Court time, you're supposed to do the tasks during that time that you requested the time for, which [plaintiff] didn't.  That imposes undue delay in a case both to the counter-party and the Court."); *see also* JSR; *cf. Pioneer*, 507 U.S. at 395 (explaining a court "tak[es] account of all relevant circumstances surrounding the party's omission").  The Court recognizes:  (1) concerns about witnesses losing their memory as time passes; and (2) plaintiff's multiple inaccurate updates regarding disclosure dates postponing the commitments of those working on this litigation.  *See* Tr. at 49:21–50:3.  Expecting the government and its expert to litigate subject to plaintiff's caprice when it keeps delaying its compliance with required deadlines weighs in favor of finding prejudice. *See id.*; Pl.'s 18 Nov. 2022 Email; Pl.'s 28 Nov. 2022 Email.  If the Court were to grant plaintiff's Motion, additional delays would further result as the expert rebuttal report and depositions would require more time, further exacerbating the issues of witness memory loss, rescheduling individual commitments, and repeated delays to the litigation.  *See* Tr. at 19:16–24, 48:4–16, 49:21–50:3.  The parties agreed on the 31 October 2022 deadline, which allowed for two months between the JSR and the deadline, and the government planned its commitments based on this schedule; this litigation has been prolonged over six years.  Adding more delays to this protracted litigation will only increase the prejudice to the government.  *See* Tr. at 50:18–20 ("[THE GOVERNMENT]: . . . [W]e have been absorbing additional delays from Spectre for years and we have tried to not bring them to the Court's attention."), 50:25–51:5 ("[THE GOVERNMENT]: . . . The prejudice is not even just this event, but rather the whole of this behavior. . . .  [T]his didn't start in November.  The Court can easily see in the recent record of this case Spectre's noncompliance with the rules.  This isn't the first time.").

While the Court finds the quantitative significance of the comparison between one month and six years suggests the one-month delay is numerically insignificant, this finding does not

detract from the overall evaluation of prejudice to the government.  Plaintiff's failure to meet the original deadline agreed upon by the parties, lack of filing of any motion for enlargement of time before the deadline, lack of accurate and updated information to the government on plaintiff's timeline for disclosure, and repeated delays within the month after the deadline passed all weigh in favor of finding prejudice.  The consistent postponement of the deadline prejudices the government by impeding its ability to litigate this case or to understand what steps to pursue at what time.  *See* Tr. at 49:21–50:3 (explaining the government's expert was unavailable in December 2022 to write a rebuttal report because he made himself available in November 2022—based on the original deadline—and then had to move all commitments because of the delays).  The government will therefore be prejudiced if the Court grants plaintiff's Motion for Enlargement of Time.  The Court weighs the parties' arguments and finds plaintiff's delay would prejudice the government.  *See Pioneer*, 507 U.S. at 398–99.

### 2.    The Second *Pioneer* Factor:  Length of Delay and its Impact on Efficient Court Administration

Both parties state the delay prejudices and harms the Court.  Tr. at 43:23–25 ("[PLAINTIFF]: . . . [T]he real harm here is the fact that the Court's order has been disobeyed. That's the harm."), 48:12–17 ("[THE GOVERNMENT]?  . . . [P]rejudice is always heightened during such proceedings for undue delay.  Witnesses' memories are starting to fail, so there's not just the prejudice to us regarding the case, but . . . [t]here's also prejudice to the Court . . . .").  Plaintiff's Motion for Enlargement of Time appears on its face to involve a single deadline, but it results in a cumulative five missed "deadlines":  (1) 31 October 2022; (2) 1 November 2022; (3) 18 November 2022; (4) 28 November 2022; and (5) 2 December 2022.

The parties proposed in their JSR the first 31 October 2022 disclosure deadline.  *See* 26 Aug. 2022 Order at 1; JSR.  The 31 October 2022 deadline also amounted to the deadline for filing a timely motion for enlargement of time.  *See* RCFC 6(b)(1)(A).  Plaintiff acknowledges it did not file its Motion before the 31 October 2022 deadline.  Tr. at 25:4–15 ("THE COURT:  . . . [T]he JSR that was submitted August of 2022, and adopted by the Court in its order, set a deadline of October 31st, for the exchange of [the expert] report, correct?  [PLAINTIFF]:  Yes. . . .  THE COURT:  Did you forget about [the deadline]?  [PLAINTIFF]:  . . . I failed to comply with it.").  The government also put plaintiff on notice multiple times over the parties' email correspondence, and plaintiff was on notice when it proposed completion dates, each of which constituted an individual "deadline."

The second "deadline" is the government's 1 November 2022 email notice to plaintiff about the missed deadline.  *See* Gov't 1 Nov. 2022 Email ("As you know, the Court's scheduling order required Spectre to provide the Government with any updated disclosures by 10/31.  As of the night of 11/1, we have not yet received any additional materials from Spectre. Please update us on the status of these materials and deliver them so that we can begin our review and response.").

The third and fourth "deadlines" are plaintiff's 18 November 2022 email to the government suggesting a disclosure date of the following Monday, 21 November 2022, and plaintiff's 28 November 2022 email to the government suggesting disclosure would be produced

that day, respectively.  *See* Pl.'s 18 Nov. 2022 Email ("I had hoped to have [the report] to you by the end of this week but looks like it might not be until Monday."); Pl.'s 28 Nov. 2022 Email ("I expect to be sending you [the] new report later today.").  After the government emailed plaintiff on 29 November 2022—conveying the government's "inten[t] to file a defendant's status report [the next day], advising the Court of the situation and recommending that the Court put in place a schedule for summary judgment proceedings"—plaintiff finally filed its Motion for Enlargement of Time.  Gov't 29 Nov. 2022 Email; *see* Pl.'s Mot.

Finally, the fifth deadline is the 2 December 2022 requested extension deadline in plaintiff's Motion for Enlargement of Time.  Pl.'s Mot. at 1 ("Spectre Corporation . . . moves pursuant to RCFC 6(b)(1)(B) for an extension of time up to and including Friday, December 2, 2022 in which to deliver [the] updated expert report to counsel for the Government.").

Plaintiff was aware of each deadline—whether through agreement with the government on the proposed schedule from the JSR, proposal of its own deadline over email, or receipt of reminders from the government about past deadlines—but still failed to meet them.  *See* JSR; Tr. at 26:25–27:7; Pl.'s 18 Nov. 2022 Email; Pl.'s 28 Nov. 2022 Email; Gov't's 1 Nov. 2022 Email; Gov't's 10 Nov. 2022 Email; Gov't's 18 Nov. 2022 Email; Gov't's 29 Nov. 2022 Email.  The 31 October 2022 deadline not only provided notice for plaintiff to request additional time as the deadline approached, but also the passing of the deadline alerted plaintiff to the requirement to file a motion.  *Cf.* RCFC 6(b)(1).  The 1 November 2022 email from the government reminded plaintiff of the 31 October 2022 disclosure deadline, informed it of the lack of any disclosure as of 1 November 2022, and requested an update on the status of the materials and their delivery—informing plaintiff of its duty to provide the disclosure and of the lapse of the deadline.  *See* Gov't's 1 Nov. 2022 Email.  Plaintiff's 18 November 2022 and 28 November 2022 emails both include new self-imposed deadlines, but plaintiff then missed both new self-imposed deadlines.  *See* Pl.'s 18 Nov. 2022 Email; Pl.'s 28 Nov. 2022 Email.  Only after the government's final email on 29 November 2022 did plaintiff file its Motion, and when the Court asked plaintiff "what made [it] finally submit a request for extension of time on the 30th[,]" plaintiff said it "thought it was time to do that."  Tr. at 33:12–15.  Despite requesting the extended deadline of 2 December 2022, plaintiff did not serve the government with any disclosure until 6 December 2022.  Tr. at 29:13–15 ("THE COURT:  . . . [W]hen did [the government] receive [the expert] report?  [THE GOVERNMENT]:  December 6th . . . ."), 30:1–2 ("[PLAINTIFF]:  . . . The 2nd was a Friday, . . . I got it to [the government] on Tuesday . . . .").

Plaintiff discovered it missed the deadline but did not submit its Motion until 30 November 2022—one month after the original, agreed-upon 31 October 2022 deadline and at least 28 days after the first time plaintiff was on notice of the missed deadline[2]—and plaintiff admits it should have filed an immediate motion.  *See* Gov't's 1 Nov. 2022 Email (notifying plaintiff of the missed deadline); Pl.'s 2 Nov. 2022 Email (responding to the government's 1 November 2022 email); Tr. at 28:11–12 ("[PLAINTIFF]:  . . . I guess I should have filed an immediate motion, but I didn't really even think of that.").  When the Court inquired why plaintiff failed to follow the deadlines, plaintiff stated it has "been pretty good over the years"

---

[2] Plaintiff was on notice at least by 2 November 2022 when it responded to the government's 1 November 2022 email.  *See* Gov't's EOT Resp. Ex. 2 ("Pl.'s 2 Nov. 2022 Email"), ECF No. 137-2.

and blames counsel for the failure to meet the disclosure deadline. Tr. at 43:2–6, 14. The Court finds the delay constitutes five missed "deadlines" and plaintiff was on notice of each of them, which cumulatively creates a greater prejudice to the Court because the delays are compounded into over three months since the first deadline was set. *See* Tr. at 48:17–49:3 ("[THE GOVERNMENT]: . . . [E]ven the count of 36 days is undercounting. . . . It's 36 minimum."). Plaintiff continually failed to abide by court procedure, and its comment about usually following court deadlines is insufficient to negate the extensive prejudice to the Court. *See* Tr. at 44:6–9 ("[PLAINTIFF]: The Court has suffered from harm because we agreed to a schedule, the Court turned it into an order, put it on the record, . . . and I did not comply with that order."). The Court determines plaintiff's failure to meet the Court's and its own deadlines, while being on notice of each, significantly hinders the efficiency of court administration and unnecessarily impedes successful progression of the case. *See Pioneer*, 507 U.S. at 398–99.

> **3.      The Third *Pioneer* Factor:  Reason for Delay and the Reasonable Control of the Movant**

Regarding the reason for the delay, the government argues the delay was due to plaintiff choosing to ignore the deadline. *See* Gov't's EOT Resp. at 8 ("Spectre immediately and flagrantly violated the Rules again by ignoring its deadline and declining to seek an extension without any reason or excuse."). Plaintiff asserts it experienced difficulties in developing the expert report but ultimately concedes "counsel for Spectre Corporation has no viable excuse for the delay, only inadequate explanations" of plaintiff overlooking the deadline. Pl.'s Reply at 1; *see also* Tr. at 32:22–33:7 ("[PLAINTIFF]: . . . I have no excuses. I've admitted that there are no excuses that are cognizable excuses. . . . [W]as I burying my head in the sand that date? Yes, I was in this bad situation where I had [expert report difficulties] . . . . But I'm not going to make excuses. . . . [N]one of them add up to . . . what the rules hold as excusable neglect."). The government agrees with plaintiff's admission. Tr. at 40:7–10 ("THE COURT: . . . [Y]our submission is that excusable neglect is not what happened here? [THE GOVERNMENT]: Absolutely not . . . . I think there's almost no way for it to have happened here.").

Regarding the degree of the movant's control, plaintiff—the movant—acknowledged it "knew [the deadline] was coming up" but overlooked the deadline; plaintiff, however, provides no explanation as to why. Tr. at 27:1–6. Plaintiff suggested it did not realize it missed the deadline until after the fact, although it acknowledged awareness of the deadline at oral argument. *Compare* Tr. at 26:5–9 ("THE COURT: The October 31st deadline was coming up. At what point did you first realize that . . . deadline was missed? [PLAINTIFF]: I think it was after the deadline . . . ."), *with* Tr. at 27:1–6 ("[PLAINTIFF]: . . . I knew that this was coming up and that we were running out of time . . . .").

Notwithstanding plaintiff's knowledge, or lack thereof, of the deadline after it passed, plaintiff agreed with the government on the original 31 October 2022 deadline in the parties' JSR and had ample opportunity to motion for a later deadline in the two months between the Order adopting the JSR on 26 August 2022 and the actual deadline of 31 October 2022. *See* Tr. at 25:4–8 ("THE COURT: . . . [T]he JSR that was submitted August of 2022, and adopted by the Court in its Order, set a deadline of October 31st, for the exchange of [the expert] report, correct? [PLAINTIFF]: Yes."). Plaintiff also had multiple opportunities to file a motion for enlargement

of time immediately after the passage of the deadline, but plaintiff waited over one month to file its Motion. *See* Tr. at 27:12–28:12 ("THE COURT: When you realized that you missed the deadline, . . . why not immediately file a motion for extension of time? [PLAINTIFF]: Well, I think I did pretty quickly. . . . I don't remember exactly why I waited. . . . I guess I should have filed an immediate motion, but I didn't really even think of that."). Plaintiff claims it did not look and only realized the deadline after it passed while also asserting it was aware of the deadline. *See* Tr. at 27:1–6 ("[PLAINTIFF]: . . . I knew that this was coming up and that we were running out of time and we had to do something, but when I got in talks with [the expert] and embroiled in figuring out how to [handle the disclosure difficulties], . . . the one thing I didn't do was look to see when the actual deadline was, and there's no excuse for that."), 34:1–3 ("[PLAINTIFF]: . . . I was actually a little surprised to find out that all the time was gone, but obviously I hadn't been paying attention to it, so that was that.").

Plaintiff's responses to the government's emails where the government explicitly emphasized the deadline dates confirm plaintiff was aware of the deadlines. *See* Gov't's 1 Nov. 2022 Email ("As you know, the Court's scheduling order required Spectre to provide the Government with any updated disclosures by 10/31."); Pl.'s 2 Nov. 2022 Email (responding to the government's 1 November 2022 email); Gov't's EOT Resp. Ex. 3 ("Gov't's 10 Nov. 2022 Email") ("It has now been over a week since your last email and I haven't heard from you regarding Spectre's disclosures that were due October 31."), ECF No. 137-3; Gov't's EOT Resp. Ex. 4 ("Pl.'s 11 Nov. 2022 Email") (responding to the government's 10 November 2022 email), ECF No. 137-4. Even if plaintiff's argument about lacking awareness of the deadline was persuasive, plaintiff was on notice of the deadline from the 1 November 2022 email, which it responded to on 2 November 2022—being on notice as of this date at the latest—yet it did not file its Motion until 29 days after receiving the email. *See* Gov't's 1 Nov. 2022 Email; Pl.'s 2 Nov. 2022 Email; Pl.'s Mot. The emails therefore show the reason for delay was not an intervening force impeding plaintiff's awareness of and ability to meet the deadline. Plaintiff's disregard of deadlines also indicates plaintiff would not have missed the deadline had it not chosen to ignore it. Whether there is indication of bad faith is unclear; as the government argues and plaintiff acknowledges, plaintiff was "burying [its] head in the sand" because it knew the deadline was coming up and did not take the appropriate steps to ensure compliance, and plaintiff still failed to promptly file a motion requesting extension when it learned it missed the deadline. *See* Tr. at 31:6–33:7. Plaintiff's course of action is not one of accidentally missing or confusing a calendar deadline else plaintiff presumably would have filed a motion immediately, but plaintiff explains it does not know why it delayed on filing a motion for enlargement of time. *See* Tr. at 28:5–8 ("[PLAINTIFF]: Yeah, I don't remember exactly why I waited. I guess the deadline was past and I was focusing . . . on getting [the expert report] done."), 33:23–34:1 ("[PLAINTIFF]: . . . I don't remember what was in my mind at that time and . . . why I didn't request an immediate extension."). The Court determines the reason for plaintiff's failure to meet the deadline is lack of diligence in abiding by Court-mandated deadlines, and plaintiff provides no sufficient explanation to the contrary, so the reason for delay was in the reasonable control of plaintiff. *See FirstHealth of Carolinas, Inc. v. CareFirst of Maryland, Inc.*, 479 F.3d 825, 829–30 (Fed. Cir. 2007) ("[T]he reasons given for delay were wholly within [the movant's] reasonable control. . . . [The movant's] complaint of a docketing error is belied by its reference to the January 31, 2004 deadline in a motion it filed before the deadline had expired."); *Pioneer*, 507 U.S. at 398–99.

### 4.    The Fourth *Pioneer* Factor:  Movant Acting in Good Faith

The parties agree there is no bad faith present in this case, but the parties dispute whether the lack of bad faith constitutes the presence of good faith or, directly, whether plaintiff's actions were in good faith.  Tr. at 60:2–14 ("[THE GOVERNMENT]:  Bad faith? . . .  I don't know that there's clear evidence of bad faith, but there's not good faith."), 62:6–9 ("THE COURT: . . . [I]s there . . . anything substantive[] that you can point to that evidences good faith?  [PLAINTIFF]: Well, it's the lack of bad faith.").

The government argues there is no genuine misunderstanding regarding the deadline and plaintiff intentionally ignored the deadline, as the three-month delay shows.  Tr. at 32:6–18 ("[THE GOVERNMENT]:  . . . [W]hat's the difference between mistake and intention to ignore? Well, either burying your head in the sand or having a genuine misunderstanding. . . .  Spectre is not pleading mistake here."); *see also* Tr. at 39:2–5.  Plaintiff's counsel acknowledges he wasted the time but cannot articulate why.  Tr. at 28:5–8 ("[PLAINTIFF]:  Yeah, I don't remember exactly why I waited.  I guess the deadline was past and I was focusing . . . on getting this done.), 33:23–34:3 ("[PLAINTIFF]:  . . . I don't remember what was in my mind at that time and . . . why I didn't request an immediate extension.  I was actually a little surprised to find out that all the time was gone, but obviously I hadn't been paying attention to it, so that was that.").  The government explains it does not "have all circumstances" for the delay so there is no way to determine if there is excusable neglect.  Tr. at 41:1–8 ("[THE GOVERNMENT]: . . . [T]he Supreme Court's description of the standard . . . is an equitable determination made after considering all circumstances, . . . [but the Court] do[es not] have all the circumstances.  Spectre is declining to turn [a full explanation of the circumstances] over, declining to give any detailed account of what actually happened and what is the reason for the delay."); *but see* Tr. at 45:25–46:2 ("[PLAINTIFF]:  . . . I've explained . . . what the circumstances are, but I don't think that they amount to excusable neglect . . . ."), 42:24–43:6 ("[PLAINTIFF]:  . . . [T]here are reasons why all this happened, . . . [and] I've explained some of the circumstances, but I'm not trying to excuse myself.").

Whether plaintiff asks the Court to grant a motion which is effectively moot is also at issue.  Plaintiff at oral argument was originally unsure of the exact date which it served the disclosure on the government.  Tr. at 29:4–7 ("THE COURT: So your motion requests an extension to December 2nd, but then when did you actually send [the government the experts] report?  [PLAINTIFF]:  I'd have to look . . . .").  Plaintiff stated the service date was a few days after the requested deadline of 2 December 2022 but claimed there was a long weekend at the start of December.  *See* Tr. at 29:7–22 ("THE COURT:  . . . [W]hen did [the government] receive [the expert] report? . . . [PLAINTIFF]:  . . .[I]t was a few days after [2 December 2022], if I recall. . . .  I think that was . . . a three-day weekend.").  Plaintiff then established the 2 December 2022 date was a Friday, and it served the report on the following Tuesday, 6 December 2022, which the government confirmed.  Tr. at 29:19–30:2 ("THE COURT:  A three-day weekend in early December?  [PLAINTIFF]:  Or maybe it was just a two-day weekend, but if I recall, it was over a weekend. . . .  The 2nd was a Friday, so . . . I got it to [the government] on Tuesday . . . ."), 29:15 ("[THE GOVERNMENT]:  December 6th . . . .").  Upon identifying plaintiff served the disclosure after the deadline it requested in its Motion, plaintiff

acknowledged it missed its requested 2 December 2022 extended deadline.  Tr. at 30:8–12 ("THE COURT: . . . [E]ven if [the Court] were to grant your motion, would that allow the report?  [PLAINTIFF]:  Well, technically not, I guess, since I asked for through the 2nd . . . ."), 30:23–24 ("[PLAINTIFF]: . . . I didn't revise the motion to ask for three more days . . . .").

Plaintiff filed its Motion for Enlargement of Time on 30 November 2022, well after the stipulated 31 October 2022 deadline.  *See* Pl.'s Mot.  Plaintiff's Motion is based on plaintiff's admittedly inexcusable failure to meet the original deadline.  *See* Pl.'s Reply at 1 ("The Government is correct; counsel for Spectre Corporation has no viable excuse for the delay, only inadequate explanations."), 2 ("[C]ounsel is not claiming excusable neglect . . . .").  Plaintiff also missed the deadline it requested in its Motion for Enlargement of Time.  Tr. at 29:4–30:12; *see also* Pl.'s Mot. at 1.  Plaintiff's repeated failures to meet deadlines indicate a lack of good faith.  Plaintiff had over two months between the 26 August 2022 Order adopting the proposed schedule from the JSR and the 31 October 2022 deadline.  *See* 26 Aug. 2022 Order at 1.  Plaintiff could have:  (1) timely filed a motion for enlargement of time at any point in the two months before the deadline; (2) filed a motion immediately after the deadline passed; (3) filed a motion once it became aware of the missed deadline from the government's 1 November 2022 email, *see* Gov't's 1 Nov. 2022 Email; or (4) filed a motion at any point after the repeated notices from the government regarding the multiple failures of plaintiff to meet its own deadlines, *see* Gov't's 1 Nov. 2022 Email; Gov't's 10 Nov. 2022 Email; Gov't's 18 Nov. 2022 Email; Pl.'s 18 Nov. 2022 Email; Pl.'s 28 Nov. 2022 Email; *supra* Section III.B.2.

Plaintiff provided no explanation as to why it finally filed its Motion on 30 November 2022.  Tr. at 33:12–15.  Plaintiff filed its Motion only after the government shared its intent to file a status report explaining to the Court it could not comply with its deadline because plaintiff failed to comply with the 31 October 2022 deadline.  *See* Gov't's 29 Nov. 2022 Email; Pl.'s Mot.  Plaintiff offered only not "paying attention" as a rationale for not filing a motion when it received the government's emails or when it realized it was not going to make any of its various internal deadlines.  Tr. at 33:12–34:3.  Plaintiff did not indicate any specific event prompting the filing on 30 November 2022, but the only apparent catalyst is the government expressing its intent to file a status report.  *Compare* Gov't's 29 Nov. 2022 Email, *with* Gov't's 1 Nov. 2022 Email; Gov't's 10 Nov. 2022 Email; Gov't's 18 Nov. 2022 Email.  When discussing the cause of the delay, plaintiff only provides information about its difficulties with the disclosure report and does not explain why delay in disclosing the report led to delay in filing a motion for enlargement of time.  *See* Tr. at 40:18–25 ("[THE GOVERNMENT]:  Spectre is withholding the facts. . . .  [The Court] got a lot of dates [and] a lot of details about the [expert report difficulties], but no detail into what was happening in the previous three months.  No dates, no times, no particular procedures.  It wasn't in their reply and it hasn't been . . . in this hearing."); *see also* RCFC 11 (stating an attorney's responsibilities when providing representations to the Court).  Further, plaintiff ultimately acknowledges its Motion does not help its case, which continues to weigh against a finding of good faith because plaintiff knows its Motion is now effectively moot.  *See* Tr. at 30:8–12.  Plaintiff's inability to comply with the Court's mandated deadline and follow the Court's procedural rules—in addition to plaintiff's unexplained decision to file its Motion on 30 November 2022 only after the government decided it would file a status report—shows a lack of good faith.  *See Pioneer*, 507 U.S. at 398–99.

Weighing the *Pioneer* factors and the parties' arguments, the Court finds the delay would prejudice the government, the length of the delay impedes efficient court administration, the reason for delay was within plaintiff's reasonable control, and plaintiff did not act in good faith. *Id.* at 395. "Ultimately, the Court places significant weight on the fact that [plaintiff] has been unable to justify—or even adequately explain—[p]laintiff's repeated delays in this case." *Wood v. United States*, No. 16-1383, 2022 WL 1422573, at *5 (Fed. Cl. May 5, 2022) (citing *Moczek v. Sec'y of Health & Hum. Servs.*, 776 F. App'x 671, 674 (Fed. Cir. 2019)), *appeal dismissed*, No. 2022-1947, 2022 WL 5434205 (Fed. Cir. Oct. 7, 2022). Plaintiff's failure to meet the 31 October 2022 deadline accordingly does not amount to excusable neglect, so a motion for enlargement of time cannot cure plaintiff's failure. *See* RCFC 6(b)(1)(B); Tr. at 25:14–16 ("[PLAINTIFF]: . . . I failed to comply with it. When you come right down to it, there is nothing that could be considered to be excusable neglect."); *Pioneer*, 507 U.S. at 395.

## IV. Whether Counsel's Mistakes are Imputed to Plaintiff

The parties dispute whether mistakes of plaintiff's counsel must be imputed to plaintiff. *See* Tr. at 45:1–5 ("[PLAINTIFF]: . . . [T]he courts always have discretion to do certain things in equity . . . ."), 46:14–22 ("[THE GOVERNMENT]: . . . [T]heir argument that the counsel be punished without the client . . . [is] foreclosed by . . . the Supreme Court . . . . It's foreclosed by *Pioneer* . . . ."). Plaintiff's counsel asks the Court to exempt the client from any penalties for counsel's errors. *See* Pl.'s Reply at 4 ("Justice will not be done by punishing Spectre for its counsel's lapses. Punish counsel if need be, but allow Spectre to continue in its quest for justice.").

A party "voluntarily cho[oses] [its] attorney as [its] representative in [an] action, and [the party] cannot . . . avoid the consequences of the acts or omissions of [its] freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of [its] lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)) (internal quotations omitted); *see also Sneed v. McDonald*, 819 F.3d 1347, 1351 (Fed. Cir. 2016) ("[T]he client is normally responsible for the malfeasance of the attorney . . . ."). There is "no merit to the contention that dismissal of [plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Pioneer*, 507 U.S. at 396 (internal quotations omitted).

The Court's evaluation of excusable neglect is not limited to the actions of counsel—"the proper focus is upon whether the neglect of [the movant] *and their counsel* was excusable." *Id.* at 397 (emphasis in original). Despite plaintiff repeatedly asserting counsel is at fault, "clients must be held accountable for the acts and omissions of their attorneys." *Id.*; Pl.'s Reply at 2–4. Plaintiff's counsel failed to meet the parties' agreed-upon—and subsequently adopted—31 October 2022 deadline; even when plaintiff filed its Motion for Enlargement of Time, requesting a 2 December 2022 extended deadline, it also missed its requested deadline. *See* 26 Aug. 2022 Order at 1; Pl.'s Mot. at 1; Tr. at 30:8–12. As plaintiff's representative, counsel's failure to meet the required deadlines is an omission not only by counsel but also by plaintiff. *See Pioneer*, 507 U.S. at 397. Counsel's culpability must be imputed to plaintiff because the client cannot avoid

the consequences of its representative's improper actions.  *See id.*  Plaintiff explains "counsel was depleted and demoralized at the thought that the case might have reached the end of the road" and by other personal matters.  Pl.'s Reply at 1; Tr. at 33:3–4.  The Court "give[s] little weight" to factors outside the scope of issues before it, including but not limited to personal and professional challenges irrelevant to the disclosures and their deadlines.  *See Pioneer*, 507 U.S. at 398 ("In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date.  We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases.").

Plaintiff's counsel urges the Court "not to punish [his] client, which has been waiting seven years for justice[,]" and "if somebody needs to be punished for this, [the Court] should punish [plaintiff's counsel.]"  Tr. at 43:2–6.  At oral argument, the Court asked plaintiff what rule permits the Court to grant plaintiff's Motion when the excusable neglect standard is not met.  *See* Tr. at 43:7–10.  Plaintiff could not cite any rule or precedent, and plaintiff requested the Court use its discretion.  *See* Tr. at 43:11–15, 18–19 ("[PLAINTIFF]:  Well, I think the Court always has a lot of discretion to do things and certainly it has the discretion not to throw a case out because of a slight delay. . . .  I don't think that there's a rule that says that . . . .").  As the government argues, "You have an agent.  Your agent is your counsel.  When counsel comes to court, they represent you, they are you.  If you don't like it, fire them."  Tr. at 47:11–14.  The Court cannot scrutinize the client's conduct and ignore the attorney's conduct as the conduct of each is not separate; there is just one relevant inquiry—whether counsel's conduct complied with RCFC 6(b)(1)(B).  "[A] determination of excusable neglect does not turn solely on whether the *client* has done all that he reasonably could to ensure compliance with a deadline; the performance of the client's *attorney* must also be taken into account."  *W. Bay Builders, Inc. v. United States*, 80 Fed. Cl. 700, 707 n.4 (2008) (emphasis in original) (internal quotations omitted); *see also Pioneer*, 507 U.S. at 397 ("[T]he proper focus is upon whether the neglect of [the movant] *and their counsel* was excusable." (emphasis in original)).  Plaintiff's arguments to separate counsel's culpability from plaintiff's contradict binding Supreme Court precedent ultimately prohibiting the use of discretion to insulate a party from liability for its counsel's misconduct.  *See Pioneer*, 507 U.S. at 396–98.  Plaintiff "must be held accountable for the acts and omissions" of its counsel.  *Id.* at 396.  The Court is foreclosed from exempting plaintiff from its counsel's failure to meet the disclosure deadline or timely file its Motion for Enlargement of Time.  *See id.*

## VI.   Conclusion

For the foregoing reasons, the Court **DENIES** plaintiff's Motion for Enlargement of Time, ECF No. 136.  The parties **SHALL FILE** a joint status report **on or before 15 May 2023** proposing a schedule for further proceedings related to briefing on the government's Motion for Partial Summary Judgment, ECF No. 115, including plans for cross-motions, if any.[3]

---

[3] At the conclusion of oral argument, the government noted should plaintiff's documents be excluded, the government would return to its Motion for Partial Summary Judgment.  *See* Tr. at 19:24–20:17, 21:1–4, 9–11.  Plaintiff did not take a clear position on filing a cross-motion at oral argument.  *See* Tr. at 23:4–21.  The Court accordingly requires a JSR on summary judgment briefing and timing of further proceedings.

**IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge